## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22964-Civ-WILLIAMS/TORRES

DANIEL VERGARA,

        Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of
the Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

      This matter is before the Court on the parties' cross motions for summary judgment filed by Dianelin Vergara ("Plaintiff") [D.E. 22] and Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") [D.E. 25] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching her unfavorable decision.  Under the limited standard of review that governs this case, the Court finds that the motions are ripe for disposition and that substantial evidence supports the ALJ's determination.[1]  For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 22] should be **DENIED**, Defendant's motion for summary judgment [D.E. 25] should be **GRANTED**, and the decision of the ALJ should be **AFFIRMED**.

---

[1] On July 17, 2020, the Honorable Kathleen M. Williams referred all dispositive matters in this case to the undersigned Magistrate Judge for a Report and Recommendation.  [D.E. 2].

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2018, Plaintiff applied for disability insurance benefits and supplemental social security income, alleging a disability onset date of January 15, 2017. The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. Plaintiff then requested a hearing before an administrative law judge ("ALJ") that took place on July 19, 2019. After considering the record and the testimony of a vocational expert ("VE"), ALJ Gracian A. Celaya issued an unfavorable decision on August 15, 2019.

At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2017. The ALJ found at step two that Plaintiff had the severe impairments of bipolar disorder, post-traumatic stress disorder, and anxiety disorder. The ALJ then determined that her severe impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels and was able to perform simple, routine tasks and make simple work related decisions. The ALJ then proceeded to step four and determined that Plaintiff could perform her past relevant work as cleaner/housekeeper. The ALJ relied on the testimony of the VE in making this determination.

On June 15, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision.   Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).  Accordingly, this action is now ripe for disposition.

Plaintiff's motion for summary judgment raises a traditional challenge to the Commissioner's disability determination, as well as a constitutional argument.  The constitutional claim alleges that the Social Security Administration's structure violates separation of powers principles and renders the Commissioner invalid.  So, according to Plaintiff, because the ALJ and the Appeals Council derived their authority to decide Plaintiff's case from this unconstitutional structure, this disability determination is constitutionally defective and ought to be remanded for a de novo hearing before a new ALJ.

## II.   STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.   ANALYSIS OF DISABILITY DETERMINATION

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves her or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If an ALJ does not make such a finding, then the inquiry ends. *See id.* at § 404.1520(c). At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or

in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. An ALJ assesses a claimant's RFC at this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy.

This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy

that the claimant can perform based on the claimant's RFC, work experience, education, and age. *See id.* at § 404.1520(e)-(f).

On appeal, Plaintiff asserts that the ALJ's decision must be remanded for two reasons: (1) the ALJ failed to properly assess the opinion evidence of record, and (2) the ALJ's RFC finding is not supported by substantial evidence. We consider each argument in turn.

### A.  *The ALJ Properly Considered the Medical Opinion Evidence*

Plaintiff first argues that the ALJ failed to properly consider the opinions from treating psychiatrist Dr. Cecilia Jorge.  Specifically, Plaintiff states that, "[w]hile the ALJ appears to discount Dr. Jorge's medical opinion . . . he never actually articulated the degree to which he deems Dr. Jorge's opinion was persuasive or not." [D.E. 22, p. 6].  As an initial matter, the rules for evaluating medical opinions in social security cases have changed.  The new regulations apply to claims filed on or after March 27, 2017, stating that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."   20 C.F.R. § 404.1520c(a).  All medical opinions are instead evaluated according to the factors listed in § 404.1520c(c), of which the most important are the supportability and consistency of the medical opinion.   And the Commissioner is not required to articulate how it "considered each medical opinion or prior administrative medical finding from one medical source individually."  § 404.1520c(b)(1).

Supportability refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her"

opinion. § 404.1520c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinion presented. § 404.1520c(c)(2). The other factors, for which the ALJ is not required to analyze in detail, concern the medical source's relationship with the claimant, the medical source's specialization, and any "other factors that tend to support or contradict a medical opinion." *See* §§ 404.1520c(c)(2)-(5); *see also Mudge v. Saul*, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019) ("Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness.") (citing 20 C.F.R. § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).

Thus, under the revised regulations, the ALJ must articulate how persuasive it finds all the medical opinions in the record, and specifically articulating how it considered the supportability and consistency factors for a medical source's opinion. *See* 20 C.F.R. § 404.1520c(b); *see also Bonilla v. Saul*, No. 19-25323-CIV, 2020 WL 9048787, at *4, n.5 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, No. 19-CV-25323, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021) ("The new regulations are, in some respects, consistent with prior Eleventh Circuit decisions because an ALJ could always "reject any medical opinion if the evidence supports a contrary finding.") (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir.

Mar. 9, 2007)).  If the ALJ finds that two or more medical opinions are equally well-supported and consistent with the record, but not the same, the ALJ must articulate how it considered other persuasive factors.  *See* 20 C.F.R. § 404.1520c(b)(3).

Here, the ALJ was unpersuaded by Dr. Jorge's opinion that Plaintiff had no useful ability to follow work rules, deal with the public, deal with work stress, function independently, understand simple or complex job instructions, or demonstrate reliability, among other limitations.  [D.E. 22, p. 7].  Contrary to Plaintiff's claim, the ALJ articulated in detail how Dr. Jorge's opinion was inconsistent and unsupported by the medical record.  [D.E. 18, pp. 27-28].

First, the ALJ observed that Dr. Jorge's conclusions were inconsistent with the findings of two different State agency psychological consultants.  *Id*.  The ALJ noted that after reviewing Plaintiff's medical records, consultants Kevin Ragsdale, Ph.D., and Alan Harris, Ph.D., concluded that Plaintiff had "moderate mental functional limitations."  *Id*.  Specifically, the ALJ relied on the consultants' findings that Plaintiff was able comprehend simple job instructions and follow routinized work processes; make basic job-related decisions and adhere to a typical work schedule; perform solitary and simple routine tasks for 2-hour increments; and perform work activities with minimum social demands and abide by conventional precepts of personal appearance and decorum.  *Id*.

Second, the ALJ then noted that Dr. Jorge's opinion was inconsistent with the overall medical record.  In doing so, the ALJ cited Dr. Jorge's own medial notes and cited to repeated references in Dr. Jorge's notes, ranging from early 2017 to early

2019, and reflecting a moderate mental status, as well as improvements.  The ALJ's analysis covered a significant number of Plaintiff's medical examinations by Dr. Jorge, and relied on Dr. Jorge's own assessments, including that "the Claimant has not been psychiatrically hospitalized nor has she needed emergency crisis stabilization;" that "[h]er appearance has been appropriate on examination" and she "has been alert and oriented;" that "[h]er content has been unremarkable and she consistently denied hallucinations and delusions;" that "[h]er thought process was logical and goal-oriented;" and that "she was distractable, but she denied suicidal/homicidal ideation." *Id.*

Third, the ALJ also found that Dr. Jorge's opinion was inconsistent with the third party function report submitted by Plaintiff's brother.  The ALJ noted that, according to that report, Plaintiff was the primary caregiver for her three children, cooked meals regularly, cleaned, shopped, went out alone, handled money without difficulty, cared for her children independently.  The ALJ expressly stated that she found Dr. Jorge's opinion that Plaintiff was unable to perform or had poor ability to perform all mental requirements of work inconsistent with a report reflecting that Plaintiff was able to engage in activities of daily living with relative independence. *Id.*; *see also* [D.E. 18, PP. 368-375].  This level of discussion of supportability and consistency by the ALJ is sufficient to meet the deferential standard that we apply in review.  *See, e.g., Pierson v. Comm'r of Soc. Sec.*, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020) (reversing and remanding the decision by the ALJ in part because the ALJ

only articulated a few declaratory sentences as to why a medical opinion only received little weight).

Instead of recognizing that the ALJ discussed the required factors under § 405.1520c when reaching an unfavorable decision, Plaintiff is essentially asking the Court to replace the ALJ's analysis under the regulations with its own.  This we cannot do.  *See Crawford*, 363 at 1158-59; *see also Medina v. Saul*, 2020 WL 5628023, at *5 (M.D. Fla. Sept. 21, 2020) (ALJ complied with 20 C.F.R. § 404.1520c by stating, "As the evidence did not support the degree of limitations Dr. Ali placed on the claimant, including her own treatment notes, this opinion was not persuasive.").  Remand on this basis is thus not appropriate because the ALJ clearly considered the supportability and consistency of Dr. Jorge's opinions as required under the regulations.  The Court's review of the record reveals substantive evidence with which to sustain the ALJ's findings.

### B.   *The RFC Finding is Also Supported by Substantial Evidence*

Next, Plaintiff argues that the Commissioner's RFC assessment contains clear error because it is not supported by substantial evidence and is inconsistent with Dr. Jorge's opinion. [D.E. 22, p. 14].  An RFC is what a claimant can still do despite his or her limitations and is an assessment based on all the relevant evidence in the record.  An ALJ often considers opinions from medical sources when determining a claimant's RFC because "the final responsibility for deciding these issues is reserved for the Commissioner."  20 C.F.R. § 416.927(e)(2).  The reason the Commissioner is tasked with this determination is because "[g]iving controlling weight to such

opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."  SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (citation omitted).  The social security regulations mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  SSR 96-8p, at *6.  As such, "[t]he ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence."  *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In making this determination, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow

us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer,* 395 F.3d at 1211) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision")); *see also Gully v. Astrue,* 2009 WL 1580416, *3 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specific[ally] and explicit[ly] set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence.") (citing *Freeman*, 220 F. App'x at 959-60) (alteration in original).

Here, substantial evidence supports the ALJ's RFC finding regardless of the opinions of Dr. Jorge. As an initial matter, the RFC determination is reserved for the ALJ, not doctors. *See Robinson*, 365 F. App'x at 999. Using this authority, the ALJ properly evaluated the evidence of record in reaching the RFC finding. Even though Plaintiff disagrees with the ALJ's conclusion, and would resolve the factual issues differently, the decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

As detailed above, in rejecting Plaintiff's initial argument, the ALJ discussed in detail why Dr. Jorge's opinion was inconsistent and unsupported by other medical reports and evidence in the record. This includes the objective opinions of two different State psychological consultants. For instance, the consultants found that Plaintiff has moderate mental limitations that allow her to "make basic job-related

decisions, adhere to a typical work schedule, and perform largely solitary, slower-paced simple, routine tasks for 2-hour increments without needing repeated reminders or some other form of specialized supervision." [D.E. 18, p. 27]. The ALJ noted that this finding was consistent with medical notes that showed that, despite Plaintiff's mood fluctuations and moderate symptoms, she consistently exhibited fair judgment, good eye contact, fair or good reliability, cooperative attitude, and unremarkable thought content. *Id.* And, most persuasively, it was also consistent with the third party function report submitted by Plaintiff's brother, which revealed that Plaintiff engaged in activities of daily living with a relative degree of independence, including cooking, cleaning, shopping, paying for bills and caring for her children. *Id.* at 29.

In sum, the ALJ evaluated Plaintiff's medical condition as a whole when making the RFC finding, including considering the opinion of Dr. Jorge. As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether or not substantial evidence in the record as a whole can support the ALJ's findings. *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212. The Court thus finds that the ALJ's conclusions are supported by substantial evidence. For these reasons, Plaintiff's motion for summary judgment should be Denied.

## IV.   ANALYSIS OF CONSTITUTIONAL CHALLENGE

Plaintiff also raises a constitutional challenge to undermine the ALJ's disability determination. Plaintiff argues that the "SSA's structure is

unconstitutional as it violates separation of powers." [D.E. 22, p. 4]. Specifically, Plaintiff alleges that "[t]he United States Supreme Court has held that it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can only be removed from his position for cause." *Id*. (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020)). According to Plaintiff, the "constitutionally invalid structure of the [Consumer financial Protection Bureau] is identical to that of the [SSA]," in that "[t]he Commissioner of SSA is the singular head of the Agency, serves for six years, and cannot be removed by the President except for cause ('neglect of duty or malfeasance in office')." *Id*. at 4 (citing 42 U.S.C. § 902(a)(3)). Accordingly, Plaintiff maintains that, because the ALJ and the Appeals Council that upheld the ALJ derived their authority from the Commissioner, and adjudicated the claim under rules promulgated by the Commissioner, this disability determination is "constitutionally defective" and ought to be remanded. *Id*. at 4-5 (citing Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-0-2(A)).

For his part, while Defendant concedes that 42 U.S.C § 902(a)(3) violates separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without case, *see* Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot., 2021 WL 2981542, at *1 (O.L.C. July 8, 2021), the Commissioner

insists that this conclusion does not support setting aside and remanding Plaintiff's disability determination.  [D.E. 25, p. 7].[2]

In particular, Defendant relies on the Supreme Court's recent holding in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and asserts that this precedent forecloses Plaintiff's arguments.  In *Collins*, the Supreme Court dealt with a similar claim to the one Plaintiff raises here.  There, plaintiffs alleged that the structure of the Federal Housing Finance Agency (FHFA) was unconstitutional because its sole director was removable by the President only for cause.  The Supreme Court found that the FHFA's removal provision was unconstitutional, but explained that even where an unconstitutional removal restriction is present, a plaintiff cannot obtain relief without showing that the "unconstitutional provision . . . inflict[ed] compensable harm."  *See Collins*, 141 S. Ct. at 1789; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("Collins is controlling with respect to the remedy for any unconstitutionality in the removal provisions.").

Plaintiff's theory for compensable harm in this case is based on the claim that, because the removal provision of 42 U.S.C. § 902(a)(3) is unconstitutional, so too were

---

[2] As a preliminary matter, the Court notes that Plaintiff invoked her constitutional argument for the first time in her motion for summary judgment.  Plaintiff's complaint is devoid of any allegations challenging the constitutionality of the disability process undertaken here.  Accordingly, Plaintiff arguably failed to give fair notice to Defendant with regard to this claim.  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint.").  But in the interests of justice and given the broad power the Court has under Rule 15(a)(2), we will address the merits of the issue.

the Commissioner's actions in his role as the head of the SSA.  This included his specific delegation of authority to the ALJ who decided Plaintiff's claim.  So, Plaintiff concludes, the unconstitutional status of the Commissioner taints the legality of the ALJ's findings and conclusions, which illegality can only be cured by a remand Order.

The Court concludes, however, that this argument has been foreclosed by the Supreme Court.  In *Collins*, the Supreme Court held that an unconstitutional removal provision does not provide a basis to conclude that the agency head subject to the removal provision "lacked the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1788.  This conclusion followed from the decision in *Seila Law*, where the Supreme Court also held that an unconstitutional removal provision does not per se render the whole underlying act void.  *See Seila Law*, 140 S. Ct. at 2211; *see also Collins*, 141 S. Ct. at 1787 n. 23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . .").

In making her argument, Plaintiff improperly conflates the rule in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), with the decisions in *Seila Law* and *Collins*.  The Court in *Lucia* "held that the appropriate remedy for an adjudication tainted with *an appointments violation* is a new hearing before a properly appointed official." *Lucia*, 138 S. Ct. at 2055 (emphasis added).  However, neither *Seila Law*, *Collins*, or the case at hand involved issues with the manner of appointment of the Commissioner or the ALJ that denied Plaintiff's claim.  *See Collins*, 141 S. Ct. at 1788 (explaining that "All the officers who headed the FHFA during the time in question were properly

appointed[,]" whereas *Lucia* "involved a Government actor's exercise of power that the actor did not lawfully possess.").   As such, the remedy prescribed by *Lucia* is inapplicable to the facts in our situation.[3]

Instead, relief is available in removal challenges only where the alleged injuries are caused by officials subject to the challenged removal restrictions, and where those restrictions themselves "inflict[ed] compensable harm" upon plaintiffs. *Collins*, 141 S. Ct. at 1789; *see also id*. at 1788 n. 24 ("What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction . . . [and] does not mean that actions taken by such an officer are void ab initio and must be undone.").

Here, however, Plaintiff fails to allege with any level of detail how the removal restrictions of § 902(a)(3) inflicted compensable harm upon her.   Plaintiff has alleged no direct action by the former tainted Commissioner himself in her denial of benefits, and no involvement—or even awareness—by the former President in the ALJ's decision.   *Cf. Id*. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

---

[3] Indeed, in response to the Supreme Court's holding in *Lucia*, on July 16, 2018, then Acting Commissioner of the SSA, Nancy Berryhill, ratified the appointments of all ALJs and approved those appointments as her own, "to address any Appointments Clause questions involving SSA claims."   *See* Soc. Sec. Admin., EM-180003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATE (2/6/2018).

Accordingly, because Plaintiff fails to show that she suffered compensable harm as a result of the removal restrictions of § 902(a)(3), her motion for summary judgment on the basis of separation of powers should be Denied on its merits. This conclusion finds ample support in recent analogous cases analyzing the same constitutional challenge. *See, e.g., Decker Coal Co.*, 8 F.4th at 1138 ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."); *Tibbetts v. Comm'r of Soc. Sec.*, Case No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at \*6 (M.D. Fla. Dec. 21, 2021) (even assuming section 902(a)(3) is unconstitutional, "the removal provision does not necessitate remand or a rehearing of Plaintiff's claim"); *Perez-Kocher v. Comm'r of Soc. Sec.*, Case No. 6:20-CV-2357-GKS-EJK, 2021 WL 6334838, at \*4 (M.D. Fla. Nov. 23, 2021) (holding that because plaintiff failed to show that § 902(a)(3) caused compensable harm, the plaintiff had failed to state a claim upon which relief could be granted); *Lisa Y. v. Comm'r of Soc. Sec.*, No. C21-5207-BAT, 2021 WL 5177363, at \*7 (W.D. Wash. Nov. 8, 2021) ("Reversal is not mandated under *Seila Law* or *Collins* because § 902(a)(3)'s removal clause is severable, and because there is no possibility § 902(a)(3)'s removal clause harmed Plaintiff."); *White v. Comm'r of Soc. Sec.*, No. 2:20-CV-1695-KJN, 2022 WL 463318, at \*6 (E.D. Cal. Feb. 15, 2022) (same); *Rivera-Herrera v. Kijakazi*, No. 1:20-CV-01326-GSA, 2021 WL 5450230, at \*8 (E.D. Cal. Nov. 22, 2021) (same); *Amanda B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00434-BR, 2021 WL 4993944, at \*9 (D. Or. Oct. 26, 2021) (same).

## V.   CONCLUSION

Substantial evidence supports the ALJ's findings as noted in his unfavorable decision.  The ALJ's conclusion applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.  And no constitutional challenge merits a remand in this case.  For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 21] be **DENIED**, that Defendant's motion for summary judgment [D.E. 22] be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to order the parties to have **ten (10) days** from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Accordingly, written objections are due by **March 7**, **2022**. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of February, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge